This morning, United States v. Kawleski Alright, I see both counsel. Ms. Edinger, you may proceed. Good morning, and may it please the court. Jessica Edinger, appearing on behalf of Alexander Kawleski. This appeal is about one witness, one flash drive, and the post-trial discovery of five statements by that witness that undermine her testimony about that one flash drive. That evidence should have triggered a new trial. To convict, the jury had to find that Kawleski saved child pornography files to a particular flash drive, and that Kawleski possessed that flash drive. The federal jurisdiction in this case hinged on that flash drive. It was the only evidence of interstate commerce. The government's ability to prove its case, in turn, hinged on Tracy Brown's credibility. She was the only witness who testified about where the flash drive was found, and provided circumstantial evidence of who produced its files. The defense certainly argued at trial that Brown's story was far-fetched. Her testimony was that she came across a cup of flash drives, and based on intuition alone, intuition, she happened to pick out the one flash drive that contained child pornography. That was suspicious. The new evidence, which is admissible under Rule 613, is the tipping point. It's the difference between arguing that Brown's story was shady generally, and pointing to evidence that she's a liar. Brown can't be trusted. The parties learned the rest of the story after trial. This happened whenever Jeremy Cecil called the U.S. Attorney's Office, concerned that Brown had committed perjury. He explains that he had heard Brown tell him years earlier that she found videos of Alexander Kawleski on a computer. Videos of Alexander Kawleski with underage girls on a computer. Of course, that's different than her testimony that she didn't have access to any of Kawleski's devices, and she had picked out a flash drive on intuition, and promptly took it to the police. But there's more, because the second piece of new evidence came from a second new witness, Amanda Hintz. And Amanda Hintz says, on the same day that Brown turned this flash drive into the police, Brown called Hintz and said she went looking for a flash drive she had earlier purchased, because she now needed it for something. Of course, that doesn't line up with her testimony, Brown's testimony, which was that Brown picked out a flash drive she didn't recognize, and she had picked it out on intuition. Third piece of new evidence. After trial, Brown and Cecil have a conversation, and Brown tells Cecil that she had had that evidence for a long time. Of course, that contradicts trial testimony too, because that contradicts what Brown said when she found the flash drive and took it to the police the same day. These statements, as the record comes to us, are not in admissible form. Correct? They're just reports at this point. The two witnesses that you're referring to, Cecil and Hintz, did not submit affidavits with the motion for a new trial. Correct? That's correct, Chief Joe Sykes. They didn't submit. Can you explain that? Why were there not affidavits submitted so that the record would reflect what they would testify to under oaths? I can't speak to trial counsel's specific decision not to submit an affidavit, except to say that Rule 33 doesn't require affidavits. The rule doesn't require it, but when you're talking about evidence like this that is conflicting, and the dates conflict in some of these statements, and the narrative conflicts in some of these statements, and so to appropriately evaluate whether, and this evidence is strictly impeachment evidence, it doesn't serve any other purpose, so to accurately evaluate whether this impeachment evidence is so powerful that a new trial is warranted, I would think that we would have that in the record in at least affidavit form before the judge could decide whether to call an evidentiary hearing or bring everyone in to have an evidentiary hearing to allow cross-examination and so forth. I would push back on that a little bit, Chief Joe Sykes, because certainly these are interviews that the defense or the government had conducted and were proffering what the witnesses would say, and in the same way that the defense didn't provide an affidavit, of course, the government didn't either. These aren't proffers, they're just documents reporting the interviews, the investigators reporting the interviews, and the defense lawyer reporting the interviews, so we don't know what the witnesses would testify to under oath because they were never placed under oath, and that's separate from the question of whether there's a reversible error on the decision not to bring everyone in and hold an evidentiary hearing and put everybody under oath and permit cross-examination. That's your fallback argument. But I'm talking about the quality of the record as it stands right now. For impeachment evidence to warrant a new trial and for the judge's decision to represent an abuse of discretion, we have to take the record as it comes to us, and it comes in an inadmissible form and with significant gaps and conflicts in what the witnesses said to different folks. Certainly, Your Honor is correct. These aren't affidavits or sworn statements. In terms of the two conflicts that Your Honor has pointed to, I would submit that they aren't as egregious as the government might push back, and my colleague on the other side perhaps will say. The two conflicts are very limited. One is as to date. Mr. Cecil is a little bit unsure as to whether the earlier conversation and what we've called the discovery statement for shorthand occurred in 2016 or a little bit later in 2018. I think that's cleared up by Ms. Hintz's statement. She's very positive that that conversation occurred in July of 2016 because she was pregnant at the time, which is a pretty good indicator. Regardless, even in that ambiguity, it's quite clear that the conversation happened well before Ms. Brown claimed she found the flash drive and turned it into the police. The second ambiguity that I believe, Chief Judge Sykes, you're referring to is exactly what Ms. Brown told Mr. Cecil she saw in 2016. In the initial, it's what she saw videos of Alexander Kovleski with underage girls, and when the defense asked slightly more probing questions, then he says, well, I believe it was images of minor A flashing Mr. Kovleski. That minor discrepancy certainly could have been flushed out in an evidentiary hearing if the defense had had an opportunity to do that. But the bottom line is that it doesn't matter exactly what Ms. Brown saw in 2016. It's the fact that she calls Mr. Cecil well before she turns in the flash drive and expresses to him that she's seen inappropriate images. That's the most reasonable inference here. We have the added problem that the forensic review of the computer in question doesn't show any illicit photographs or videos. I'd submit, Chief Judge Sykes, that that's not a problem. The forensic the forensic computer exam, which doesn't take place till June of 2020, is better characterized, I think, as a distraction rather than dispositive. The import here is that Mr. Cecil is simply reporting what Ms. Brown told him, and he reports that Ms. Brown told him the images came off of this computer. He has no reason to know that. And we consider that evidence in combination with the other new pieces of evidence. The fifth piece of evidence I was going to suggest to review for the court is that when Brown is interviewed after trial, she tells police, well, I know that the files didn't come from that particular computer. And that's certainly contradictory and suggests that she knows where they did come from. That's the most reasonable inference. So whether they were or weren't on the Apple Tower computer specifically isn't, I would submit, relevant. I'd like to reserve some of my time for rebuttal, please. Thank you. Thank you, Your Honors. May it please the court. My name is Elizabeth Altman and I represent the United States in this case. Despite the defendant's attempt to convolute and complicate things and talk about these five statements and what makes sense and what doesn't make sense, this really is a simple case. The only question for this court is whether the district court abused its discretion in denying the defendant's motion for a new trial. And quite frankly, the district court didn't. As this court knows and is aware and alluded to, getting a new trial on new evidence is a huge, huge hurdle. And overturning the district's court's decision is frowned upon and reserved for only the most extreme cases. This evidence that the defense now wants you to consider in finding this to be one of these extraordinary cases is simply insufficient to do that. All it takes to see that the district court did not abuse its discretion is to look at the hearing transcript and to look at its order. The district court took everything that the defendant proffered at face value and in the light most favorable to the defendant. And I'll address that in a minute about talking why we don't need an evidentiary hearing. He questioned the defense attorney as to how this is going to come in. What are you going to show from that? What is this going to make different? And he understood the burden that the defense had to meet, which is important because in the reply brief, the defense alleges that both the government and the court used the wrong standard in making its decision. And it's quite clear from the record that everybody knew what the standard was, particularly the court who made the decision. On the appellate appendix, page 38, you can see that the court said, I don't think this new evidence is so transformative that it would have produced a completely different strategy and result in a different result, which is the right standard and which is what the court used. On appellate in the appendix, page 44, the court again says that talking about the evidence that it had to probably would have led to an acquittal and Cecil's testimony doesn't come close to that. So it was using the district court used the right standard in making its decision. So that being said, in order to show the result would have been different, which of course is the standard, the jury would have to buy this new theory, this new crazy theory that Tracy Brown somehow found the charges charged images at some point earlier in time, that some unknown device, because while the initial allegation was the Apple computer, we know it wasn't the Apple tower. And now they're saying maybe it wasn't the Apple tower, maybe it was something different, copied them onto a thumb drive herself, therefore producing them, which she was asked about in trial, and she denied my co-counsel specific. Miss Altman, does the jury have to buy a brand new theory that that Miss Brown produced the child pornography on the flash drive, or does the jury just have to decide, you know what, we don't find her credible, and therefore we don't see proof here beyond a reasonable doubt. Well, I think there's some interplay in that question, because if, if they don't find her credible, they will find him not guilty, but they will have to find that she copied the images onto the flash drive that she had in her possession, in order to find that he didn't right I mean who else would have, it was either her or him. And so, unless there's going to be a third theory that Tracy in conjunction with Amanda or Tracy in conjunction with someone else put the, the items on the thumb drive, particularly in light of the conversations that that they're saying happened earlier with with Mr. Cecil, that's the only implication is that she did it. And so, while they only don't have to believe her or find her credible. That would mean that she did it. So I think they're, they're kind of conflated. Was there a state prosecution for the sexual assault that's depicted in the video. I believe that there was, um, I know that it was pending during the course of our trial and but I don't know, I know that there was one pending during the course of our case I don't know how it was ultimately resolved I apologize. So there were charges brought. Yes. Yes. And this pornography charge could have been brought in state court as well. The only reason it's a federal court is because of the flash drive and jurisdictional hook that the flash drive travel and interstate commerce right. Yes, I mean that was that was a federal hook. Yes. But when, when you think that it's just the jurisdictional hook. I mean, Tracy Brown was important, Tracy Brown, we, I mean the government proved everything else right there's no dispute that the defendant used a minor to engage in sexually explicit conduct that the, the images in the statements is how the images got onto the thumb drive. And while Tracy Brown was the conduit. We have cases all the time, where images are found in someone's house, and the conclusion is by juries and, and other you know courts. Well, the defendant put them there and that's essentially what we have here. Well, Tracy was the one who found them, and who turned them over to the police. That's really her role. There's absolutely no evidence whatsoever, that she put them on there and that, you know, going back to your honors question. That's what the court would have to find to find that he didn't put them there. As to whether or not an evidentiary hearing would have to find that there's reasonable doubt that he transferred the images from some other device to the flash drive because correct. Absolutely. And so if there's powerful impeachment of her testimony. Then the argument goes, could create reasonable doubt about whether he transferred them to the flash drive and then the flash drive is critical to the case being in federal court. Absolutely. But, but I think Chief Judge Sykes you hit on the key point, if there was credible evidence and then there's not these statements, don't get there. And that's what Judge Peterson found. I mean he specifically said Cecil's testimony doesn't come close to leading to an acquittal. And what's important about that and this goes to the evidentiary hearing is that in document number 90. The defendant laid out for the court, what would have happened had there been a new trial, it says the factual proffer and he lays out what everybody would have said what everybody would have testified to how he would have supported this new evidence. And at the end of it, he says, this is the entire scope of evidence that the defense would offer at a new trial and it should inform the court's decision moving forward. That's the information that the court had in front of it, when it made its decision that the defendant didn't warrant a new trial and that this new evidence didn't warrant a trial. We had a hearing on that. The transcript of the hearing, the judge asked these questions, asked how the evidence came in. He said, you know, I don't think that Mr Cecil's necessarily a liar when we called him a liar but but there are some problems with his testimony. And when you read his opinion, he carefully goes through all of the testimony, taking it in the light, most favorable to the defendant. There's nothing that can be gained by having an evidentiary hearing on this. The court heard what would come from it. The court took it in the light, most most favorable to the defendant and said, look, I'm sorry, this just isn't enough. What you want is a new trial. And most of this information was already known to you, most of it, not all of it, but that doesn't get you a new trial. This isn't the case where you get a new trial, and that simply was not plain error. Unless the jury were to credit Cecil's testimony and his testimony, is that a basis to argue reasonable doubt, a powerful basis to argue reasonable doubt? I think they can always argue reasonable doubt, of course. Would it have put it over the edge? I don't I don't think so. I mean, he called Miss Brown a liar. He, you know, poked holes in her story. He tried to portray her as being mad at him. You know, would an inconsistent statement by an ex-boyfriend and a statement that may or may not have been inconsistent by a friend push it over the edge? I don't I don't think it would have, quite frankly. Thank you. If there are no further questions, then I would simply ask this court to affirm the judgment of the lower court and affirm the defendant's conviction. Thank you. Thank you, Your Honor. There's really three points to take away from our briefs and from today's argument. And the first is what the government repeatedly stated, which is that if Brown can't be trusted, then the jury has to acquit because this is a one witness, one flash drive case on production and possession. And to that end, the newly discovered statements do matter as impeachment evidence, although we've suggested they could have come in, they could come in for other substantive purposes, too, but at a minimum for their impeachment value. And that is what makes this the rare case envisioned in Taglia, which is this court's precedent and what the government has relegated to a but see site. I see that my time has expired, but if there are any further questions from the court, I'd be happy to answer them. Thank you. We'd ask the court to reverse. Thank you. Thanks to both counsel. The case was taken under advisement.